# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| MERSHELL AUSTIN,[1] )<br>   Plaintiff )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br> **Commissioner of Social Security,** )<br>   Defendant ) | Civil Action No. 2:10cv00030<br>**REPORT AND**<br>**RECOMMENDATION**<br><br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Meshell Austin, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

---

[1] The plaintiff's name is misspelled on the Complaint. The correct spelling of her name is Meshell Austin.

-1-

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Austin protectively filed her applications for DIB and SSI on January 16, 2008,[2] alleging disability as of January 12, 2007, due to chronic depression, anxiety, panic attacks, fibromyalgia, thyroid problems, anemia, alopecia,[3] acid reflux disease, restless leg syndrome and insomnia. (Record, ("R."), at 159-67, 184, 189.) The claims were denied initially and on reconsideration. (R. at 106-08, 114, 116-18, 120-24, 126-27.) Austin then requested a hearing before an administrative law judge, ("ALJ"). (R. at 128.) The hearing was held on October 15, 2009, at which Austin was represented by counsel. (R. at 33-53.)

---

[2] On May 20, 2005, Austin filed applications for DIB and SSI, alleging disability as of April 15, 2004. (R. at 57.) The claims were denied initially and on reconsideration. (R. at 57.) Austin then requested a hearing, which was held on November 13, 2006. (R. at 57.) By decision dated January 11, 2007, the ALJ denied Austin's claims. (R. at 57-69.) There is nothing in the record to indicate that Austin appealed this decision.

[3] Alopecia is defined as the loss of hair; baldness. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 31 (1995.)

By decision dated November 5, 2009, the ALJ denied Austin's claims. (R. at 12-27.) The ALJ found that Austin met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2009. (R. at 14.) The ALJ also found that Austin had not engaged in substantial gainful activity since January 12, 2007, the alleged onset date. (R. at 14.) The ALJ determined that the medical evidence established that Austin suffered from severe impairments, including obesity, osteoarthritis, fibromyalgia, arthralgias, attention deficit hyperactivity disorder, a depressive disorder and an anxiety disorder, but she found that Austin did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15, 19.) The ALJ found that Austin had the residual functional capacity to perform simple, routine, repetitive, unskilled light work[4] that required no more than frequent stooping and reaching; occasional kneeling, crawling and squatting; no exposure to excess humidity, pollutants and irritants, hazardous machinery, unprotected heights or vibrations; no climbing ladders, ropes or scaffolds; and only occasional interaction with the general public. (R. at 21.) The ALJ found that Austin was unable to perform her past relevant work as a cook, a housekeeper and a janitor. (R. at 26.) Based on Austin's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Austin could perform, including jobs as a food preparation worker, a dishwasher and a general office clerk. (R. at 26-27.) Thus, the ALJ found that Austin was not under a

---

[4]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

disability as defined under the Act and was not eligible for benefits. (R. at 27.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

After the ALJ issued her decision, Austin pursued her administrative appeals, (R. at 6), but the Appeals Council denied her request for review. (R. at 1-5.) Austin then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Austin's motion for summary judgment filed October 21, 2010, and the Commissioner's motion for summary judgment filed December 20, 2010.

## *II. Facts*

Austin was born in 1965, (R. at 36, 159, 163), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Austin completed the seventh grade.[5] (R. at 37, 194.) Austin testified that she attempted to obtain her general equivalency development, ("GED"), diploma, but that she could not do it. (R. at 37.) She stated that she was able to read, but had difficulty spelling. (R. at 37.) When asked if she could do simple math, such as adding, subtracting, multiplying and dividing, she stated that she could, but "very little." (R. at 37.)

---

[5] Because Austin completed only the seventh grade, she has a "limited education," defined in the regulations as having an ability in reasoning, arithmetic and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semiskilled or skilled jobs. An individual with seventh-grade through eleventh-grade level of formal education is deemed to have a limited education. *See* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (2010).

At issue in this case is Austin's mental residual functional capacity. In rendering her decision on this issue, the ALJ reviewed records from Wise County Public Schools; Joann Cox, L.C.S.W., a licensed clinical social worker; Joseph I. Leizer, Ph.D., a state agency psychologist; Dr. Ronald Smith, M.D.; and Dr. Pradipchandra B. Kapadia, M.D. The ALJ also had records from Austin's various treating and consultative physicians before her.

Austin received psychotherapy from Joann Cox, L.C.S.W., a licensed clinical social worker, and Dr. Ronald Smith, M.D., from January 2006 through September 2009. (R. at 307-11, 432-37, 585-87, 589-93.) Austin reported having a depressed mood, decreased energy and a feeling of being overwhelmed with stress. She also complained of low self-esteem and feelings of self-consciousness about her appearance. (R. at 307-11, 432-37, 585-87.) Austin reported that her symptoms worsened as a result of a divorce, after leaving her husband and children for another man. (R. at 309, 351, 412.) Cox noted that Austin continued to struggle with alopecia, including the effect it had on her daily functioning and Austin's belief that she could not be gainfully employed. (R. at 307-11, 432-37, 585-87.) Austin also reported that she had difficulty being around people and being in crowds. (R. at 436-37, 586-87.)

On July 5, 2006, Dr. Smith stated that Austin had "difficulty identifying interpersonal issues, instead is able to introduce symptom after symptom." (R. at 337.) On January 31, 2007, Austin reported that she was less anxious and depressed. (R. at 328.) Dr. Smith reported that Austin's intellect, memory, orientation and concentration were intact. (R. at 328.) On June 13, 2007, Dr. Smith

reported that Austin's affect was brighter. (R. at 322.) Her intellect, memory, orientation, fund of knowledge, attention and concentration all were intact. (R. at 322.) On August 8, 2007, Austin reported that she was doing better. (R. at 321.) Her intellect, memory, orientation, fund of knowledge, attention, concentration and judgment all were intact. (R. at 321.) On November 19, 2008, Dr. Smith reported that Austin did not appear depressed. (R. at 574.) He reported that Austin's "cognitive function, memory, concentration all seem grossly intact." (R. at 574.)

On March 18, 2009, Dr. Smith completed a Mental Residual Functional Capacity Questionnaire indicating that Austin had been diagnosed with recurrent major depressive disorder, anxiety disorder, not otherwise specified, and attention deficit disorder. (R. at 461-65.) He reported that Austin's then-current Global Assessment of Functioning score[6] was 60,[7] with her highest GAF score being 60 within the past year. (R. at 461.) He found that Austin had a very good ability to understand, remember and carry out short and simple instructions. (R. at 463.) Dr. Smith reported that Austin had a limited, but satisfactory, ability to remember work-like procedures, to maintain regular attendance and be punctual within customary, usually strict tolerances, to ask questions or request assistance, to be aware of normal hazards and take appropriate precautions, to deal with the stress of semiskilled and skilled work, to maintain socially appropriate behavior and to

---

[6] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994.)

[7] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

adhere to basic standards of neatness and cleanliness. (R. at 463-64.) He reported that Austin was seriously limited, but not precluded, in her ability to maintain attention for two-hour segments, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being unduly distracted, to accept instruction and respond appropriately to criticism from supervisors, to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, to respond appropriately to changes in a routine work setting, to understand, remember and carry out detailed instructions, to set realistic goals or make plans independently of others, to interact appropriately with the public, to travel in unfamiliar places and to use public transportation. (R. at 463-64.) Dr. Smith also reported that Austin was unable to meet competitive standards in her ability to make simple work-related decisions, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods and to deal with normal work stress. (R. at 463.)

On May 6, 2009, Austin reported that her depression was "a little bit better." (R. at 567.) Dr. Smith noted that Austin seemed less depressed. (R. at 567.) In September 2009, Dr. Smith again noted that Austin seemed less depressed. (R. at 562.)

On October 8, 2009, Cox completed a Mental Residual Functional Capacity Questionnaire indicating that Austin was diagnosed with unspecified, recurrent major depressive disorder and an anxiety disorder, not otherwise specified. (R. at 589-93.) Cox reported that Austin had a limited, but satisfactory, ability to

remember work-like procedures. (R. at 591.) She reported that Austin had a seriously limited, but not precluded, ability to perform all other work-related activities, with the exception of being unable to meet competitive standards in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (R. at 591-92.)

On April 28, 2006, Dr. Pradipchandra B. Kapadia, M.D., reported that he had treated Austin for about 10 years and that she had been in more or less consistent pain, along with anxiety, depression and fibromyalgia. (R. at 414.) Dr. Kapadia opined that Austin had difficulty maintaining a regular job and "should be considered for disability." (R. at 414.)

On September 24, 2008, Joseph I. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Austin suffered from an organic mental disorder, an affective disorder and an anxiety-related disorder. (R. at 395-408.) Leizer reported that Austin had no restrictions of activities of daily living, moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace. (R. at 406.) He also reported that Austin had not suffered any extended episodes of decompensation. (R. at 406.)

That same day, Leizer completed a mental assessment indicating that Austin was moderately limited in her ability to understand, remember and carry out detailed instructions; to work in coordination with or proximity to others without being distracted by them; to interact appropriately with the general public; and to

accept instructions and respond appropriately to criticism from supervisors. (R. at 410-13.) Leizer reported that Austin's allegations were not fully credible and that she was able to perform the mental demands of simple, unskilled and nonstressful work. (R. at 412.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B)

(West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Austin argues that the ALJ's finding regarding her mental residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-19.) In particular, Austin argues that the ALJ failed to give proper weight to the opinions of her treating sources, Dr. Kapadia, Dr. Smith and Cox. (Plaintiff's Brief at 9-19.) Based on my review of the record, I agree and recommend that the court vacate the Commissioner's decision denying benefits and remand the case to the Commissioner for further development.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein.

*See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

The ALJ in this case found that Austin had the residual functional capacity to perform simple, routine, repetitive, unskilled light work that required no more than occasional interaction with the general public. (R. at 21.) The ALJ noted that she was giving no weight to the opinion of Dr. Kapadia because it was not supported by his own clinical findings and because he was not a mental health professional. (R. at 24.) The ALJ further noted that she was giving no weight to Cox's opinion because as a social worker/counselor, she was not an acceptable medical source. (R. at 25.) The ALJ also noted that Cox's opinion was based too heavily upon Austin's subjective complaints. (R. at 25.) Concerning Dr. Smith's opinion, the ALJ noted that it was inconsistent with his own clinical records, in which he noted that Austin was functioning adequately. (R. at 25.) She noted that there was insufficient evidence to support Dr. Smith's opinion that Austin would be absent from work more than four days a month. (R. at 25.) The ALJ noted that both Smith and Cox agreed that Austin was seriously limited, but not precluded, from performing most mental tasks, and that the residual functional capacity found by the ALJ reflected those limitations. (R. at 25.) Based on that, the ALJ noted and Dr. Smith's opinion was "accordingly credited in part." (R. at 25.) The ALJ also

noted that she was giving greater weight to the state agency psychologist's opinion dated September 24, 2008, because "it is consistent with the preponderance of the evidence." (R. at 25.)

The state agency psychologist, however, found that Austin could perform the mental demands of simple, unskilled and nonstressful work. (R. at 412.) While the ALJ noted that the state agency psychologist found that Austin could perform work within these limitations, she failed to find that Austin was limited to nonstressful work. (R. at 21, 25.) The ALJ also failed to address why she was ignoring this limitation. In addition, Dr. Smith also found that Austin was unable to meet the competitive standards in her ability to deal with normal work stress. (R. at 463.) Furthermore, the state agency psychologist's assessment was completed in September 2008, and Dr. Smith's assessments were not completed until 2009. Therefore, the state agency psychologist did not have the benefit of reviewing Dr. Smith's assessments before rendering his opinion. (R. at 395-408, 461-65.) That being the case, I cannot find that substantial evidence exists to support the ALJ's finding with regard to Austin's mental residual functional capacity. An ALJ is not free to simply disregard uncontradicted expert opinion in favor of her own opinion on a subject she is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984).

Based on the above, I find that substantial evidence does not exist in the record to support the ALJ's finding as to Austin's mental residual functional capacity. I recommend that the court deny Austin's and the Commissioner's motions for summary judgment, vacate the decision of the Commissioner denying

benefits and remand this case to the Commissioner for further development consistent with this decision.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's finding regarding Austin's mental residual functional capacity; and

2. Substantial evidence does not exist in the record to support the ALJ's finding that Austin was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Austin's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Austin's claims to the Commissioner for further development.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: March 11, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE